# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

DANIELLE LARANE HART,

        Plaintiff,

v.                                                    Case No. 3:19-cv-938-JRK

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

_____

# OPINION AND ORDER[1]

## I.   Status

Danielle Larane Hart ("Plaintiff"), who was originally found to be disabled by the Social Security Administration ("SSA"), is appealing the SSA's final decision finding that as of February 17, 2016, she is no longer disabled and therefore ineligible for continued supplemental security income. Plaintiff's alleged inability to work is the result of a visual impairment, blindness in the left eye, and blurred vision in the right eye. Transcript of Administrative Proceedings (Doc. No. 17; "Tr." or "administrative transcript"), filed February

---

[1]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 16), filed February 12, 2020; Reference Order (Doc. No. 19), entered February 12, 2020.

12, 2020, at 47, 255. The original finding of disability was made on July 12, 2011, Tr. at 18, and was based on congenital glaucoma, Tr. at 55.[2]

Thereafter, the SSA conducted a review of Plaintiff's disability status, see 20 C.F.R. § 416.994(a), and made an initial determination on February 17, 2016 that Plaintiff is no longer disabled as of that date, Tr. at 47-54, 55, 56, 68-71. Plaintiff, proceeding without counsel or a representative, sought reconsideration of that determination. Tr. at 76. On reconsideration, the SSA made the same determination. Tr. at 59. The matter was referred to a State Agency Disability Hearing Officer, who issued a decision on November 7, 2016 upholding the initial determination. Tr. at 85-91; see also Tr. at 92-97. The Disability Hearing Officer did not hold a hearing prior to issuing the decision, finding that on November 3, 2016, Plaintiff waived her right to a hearing. See Tr. at 85-87.[3]

On November 18, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at 99.[4] A hearing was scheduled for

---

[2]     The July 2011 determination is not part of the administrative transcript.

[3]     The administrative transcript contains a document titled, "Waiver of Right to Appear – Disability Hearing." Tr. at 98. It is signed by Plaintiff, but it is dated November 11, 2016 (after the Disability Hearing Officer issued the decision), not November 3, 2016.

[4]     Although Plaintiff did not identify a representative in the form requesting a hearing, see Tr. at 99, the administrative transcript contains a November 29, 2016 letter sent

(Continued…)

August 11, 2017. Tr. at 117 (notice of hearing); see also Tr. at 303, 304 (showing notice of hearing was returned as undeliverable). On September 5, 2017, Plaintiff's request for a hearing was dismissed because Plaintiff failed to appear for the scheduled August 11, 2017 hearing. See Tr. at 60-64.

Plaintiff sought review by the Appeals Council of the dismissal, asserting that she missed the hearing but had "left a message saying [she] couldn't make it." Tr. at 140, 174 (duplicate). The Appeals Council found that although a notice of hearing was sent to Plaintiff, the SSA did not send a "reminder notice" or "personally speak" to Plaintiff. Tr. at 66. Accordingly, the Appeals Council remanded the matter to the ALJ to give Plaintiff "another opportunity for a hearing." Tr. at 67; see Tr. at 65-67.

On August 1, 2018, a different ALJ held a hearing, during which she heard testimony from Plaintiff, who proceeded pro se. See Tr. at 30-46. Plaintiff was thirty years old on the date of the hearing. See Tr. at 33. The ALJ issued a Decision on January 23, 2019, finding that Plaintiff's disability ended on

---

to a Bruce Feifer in which the SSA indicated Plaintiff had appointed him to act as her representative. See Tr. at 111. There are also three letters dated December 2, 2016 that were sent to Plaintiff with copies to Mr. Feifer, see Tr. at 102-04, 105-07 (same in substance), 113, and one letter dated February 14, 2017 that was sent to Mr. Feifer but returned as undeliverable, see Tr. at 300. The administrative transcript, however, does not contain an appointment of representative or a fee agreement signed by Plaintiff and Mr. Feiser, or any other evidence showing that Mr. Feifer was indeed representing Plaintiff in her social security case.

February 17, 2016 and that she had not become disabled again through the date of the Decision. Tr. at 16-24.

Thereafter, Plaintiff obtained counsel, Tr. at 12, and requested review of the Decision by the Appeals Council, Tr. at 202. The Appeals Council received additional evidence in the form of a brief authored by Plaintiff's counsel. Tr. at 4, 5; see Tr. at 339-42. On June 13, 2019, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, making the ALJ's Decision the final decision of the Commissioner. On August 14, 2019, Plaintiff, through counsel, commenced this action under 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

Plaintiff makes four arguments on appeal: 1) "Plaintiff was denied her right to a full and fair hearing as the ALJ failed in her special duty to develop a full and fair record[,] preju[dicing] Plaintiff"; 2) "the ALJ's [residual functional capacity ('RFC')] determination is not supported by substantial evidence because she failed to develop the record as to the extent of [Plaintiff's] visual limitations"; 3) "the ALJ's determination that [P]laintiff can perform a wide range of employ[me]nt is not supported by substantial evidence[,] and the [ALJ did] not meet [her] burden at step 7 of the evaluation process"; and 4) "the ALJ's

credibil[i]ty determination[5] is not supported by substantial evidence." Plaintiff's Brief (Doc. No. 21; "Pl.'s Br."), filed April 13, 2020, at 1-2, 11, 17, 19, 22 (emphasis and some capitalization omitted). On June 8, 2020, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 22; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded because Plaintiff did not knowingly and voluntarily waive her right to be represented, and the ALJ failed to develop a full and fair record in light of Plaintiff's pro se status.

On remand, an appropriate development of the record may impact the ALJ's RFC determination (Plaintiff's second argument), the ALJ's findings at step seven (Plaintiff's third argument), and the ALJ's evaluation of Plaintiff's subjective symptoms (Plaintiff's fourth argument). For this reason, the Court need not address these issues. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam)

---

[5]     In 2017, the SSA issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms. The SSA explained that it "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy, as [the R]egulations do not use this term." Social Security Ruling ("SSR") 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017).

(concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II.   The ALJ's Decision

An ALJ typically follows a five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations") when deciding whether an individual is disabled,[6] determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

When the ALJ is determining whether a disability has ended, however, the Regulations mandate following a different sequential inquiry. See 20 C.F.R. § 416.994(b). This sequential inquiry asks, in substance, whether the claimant

---

[6]   "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

(1) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (2) has experienced medical improvement; (3) has experienced medical improvement that is related to the ability to work; (4) has experienced medical improvement, but an exception to the medical improvement applies; (5) has current impairments that when considered in combination are severe; (6) can perform past relevant work; and (7) can perform other work that exists in the national economy. See 20 C.F.R. § 416.994(b). "When considering a case for termination or cessation of benefits, . . . the burden is on the Commissioner to prove that the claimant is no longer disabled as of the cessation date because the [p]laintiff had experienced 'medical improvement.'" Townsend v. Comm'r of Soc. Sec., No. 6:13-cv-1783-DAB, 2015 WL 777630, at *3 (M.D. Fla. Feb. 24, 2015) (unpublished) (emphasis omitted) (citing Simpson v. Schweiker, 691 F.2d 966, 969 (11th Cir. 1982), superseded by statute on other grounds as stated in Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991); Huie v. Bowen, 788 F.2d 698, 705 (11th Cir. 1986); Carbonell v. Comm'r of Soc. Sec., No. 6:11-cv-400-ACC-GJK, 2012 WL 1946070, at *3-4 (M.D. Fla. May 11, 2012), report and recommendation adopted, No. 6:11-cv-400-ACC-GJK, 2012 WL 1946072 (M.D. Fla. May 30, 2012)).

Here, the ALJ found as follows:

1.     The most recent favorable medical decision finding that [Plaintiff] was disabled is the determination dated July 12, 2011.

> This is known as the "comparison point decision" or CPD [(hereinafter "CPD")].
>
> 2.    At the time of the CPD, [Plaintiff] had the following medically determinable impairments: visual impairments and vision loss; left eye blindness; cataracts; glaucoma; nystagmus; and pseudophakia, right eye. These impairments were found to meet section(s) 2.02 (loss of visual acuity) of 20 [C.F.R.] Part 404, Subpart P, Appendix 1.
>
> 3.    The medical evidence establishes that [Plaintiff] did not develop any additional impairments after the CPD through February 17, 2016. Thus, [Plaintiff's] current impairments are the same as the CPD impairments.

Tr. at 18 (emphasis and citations omitted).

The ALJ then engaged in the rest of the steps in the sequential inquiry. At step one, the ALJ determined that "[s]ince February 17, 2016, [Plaintiff] has not had an impairment or combination of impairments which meets or medically equals the severity of an impairment listed in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 18 (emphasis and citation omitted). At step two, the ALJ found that "[m]edical improvement occurred on February 17, 2016." Tr. at 18 (emphasis and citation omitted).

At step three, the ALJ found that Plaintiff's "medical improvement is related to the ability to work because, by February 17, 2016, [Plaintiff] no longer had an impairment or combination of impairments that met or medically equaled the same listing(s) that was met at the time of the CPD." Tr. at 18 (emphasis and citation omitted). At step four, although not explicitly stated, it

can be inferred from the Decision that the ALJ found no exceptions apply to the medical improvement. At step five, the ALJ found that "[s]ince February 17, 2016, [Plaintiff's] impairments ha[ve] continued to be severe." Tr. at 19 (emphasis and citation omitted).

Then, the ALJ found that as of February 17, 2016, Plaintiff has had the following RFC: Plaintiff can "perform medium work as defined in 20 [C.F.R. §] 416.967(c) except she must avoid all exposure to work hazards; and she is limited to work tasks not requiring binocular vision." Tr. at 19 (emphasis omitted).

At step six, the ALJ found Plaintiff "has no past relevant work." Tr. at 22 (emphasis and citation omitted). The ALJ then proceeded to step seven and, after considering Plaintiff's age ("a younger individual"), education ("at least a high school education"), lack of work experience, and RFC, the ALJ found that "[s]ince February 17, 2016, . . . [Plaintiff] has been able to perform a significant number of jobs in the national economy." Tr. at 22-23 (emphasis and citation omitted). The ALJ concluded that Plaintiff's "disability ended on February 17, 2016, and [Plaintiff] has not become disabled again since that date." Tr. at 23 (emphasis and citation omitted).

## III.   Standard of Review

This Court reviews the Commissioner's final decision as to cessation of disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference

is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" <u>Doughty v. Apfel</u>, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing <u>Falge v. Apfel</u>, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Falge</u>, 150 F.3d at 1322 (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)); <u>see also</u> <u>Biestek v. Berryhill</u>, 139 S.Ct. 1148, 1154 (2019); <u>Samuels v. Acting Comm'r of Soc. Sec.</u>, 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). The key is "whether the [Commissioner's] finding of improvement to the point of no disability is supported by substantial evidence." <u>Simpson</u>, 691 F.2d at 969. It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted); <u>see also</u> <u>McRoberts v. Bowen</u>, 841 F.2d 1077, 1080 (11th Cir. 1988); <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the

Commissioner's findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV.   Discussion[7]

**A.   Parties' Arguments**

Plaintiff contends that "there is little evidence, if any, contained in the [administrative transcript] that indicates [she] knowingly and voluntarily waived her right to representation." Pl.'s Br. at 13. Plaintiff states she signed a written waiver but argues that "due to her visual impairments, this form alone, without additional evidence that the rights contained therein were explained or discussed with [her] either before or during the hearing, cannot constitute a knowing and voluntary waiver of representation." <u>Id.</u> Plaintiff asserts that because she did not validly waive her right to be represented, the ALJ had a special duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," and the ALJ failed to fulfill this duty. <u>Id.</u> at 16 (quoting <u>Smith v. Schweiker</u>, 677 F.2d 826, 829 (11th Cir. 1982)). Specifically, Plaintiff contends the administrative transcript "reveals significant evidentiary gaps" that resulted in prejudice to Plaintiff. <u>Id.</u> at 15-16.

Responding, Defendant argues the administrative transcript, including the signed waiver, "establishes that the Commissioner informed Plaintiff of her

---

[7]       As noted, the undersigned addresses only Plaintiff's first argument regarding the waiver of her right of representation.

right to representation and she knowingly and voluntarily waived her right to representation." Def.'s Mem. at 6. Defendant asserts that "Plaintiff failed to prove she was prejudiced due to a lack of representation, even if she had not voluntarily waived her right to representation." Id. at 7 (citation omitted). According to Defendant, "regardless of representation the claimant always carries the burden of proving that she is disabled, and, thus, is ultimately responsible for producing evidence to support her claim." Id. (citation omitted).

## B.   Applicable Law

A claimant has a statutory right to be represented at a hearing before an ALJ. 42 U.S.C. § 406; see also Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995); Smith, 677 F.2d at 828. The Commissioner "has a duty to notify [the] claimant of his or her right to [representation] before the hearing." Smith, 677 F.2d at 828 (citation omitted). Though the right to be represented may be waived by the claimant, the waiver must be knowing and voluntary. See Brown, 44 F.3d at 935; Smith, 677 F.2d at 828. "[S]uch a waiver must establish, at some point, that the claimant is properly apprised of his [or her] options concerning representation to be effective." Smith, 677 F.2d at 828 (citation and internal quotation marks omitted)

"When an unrepresented claimant unfamiliar with administrative hearing procedures appears before an ALJ, the ALJ is under an obligation to develop a full and fair record; i.e. the record must disclose that there has been

a full and fair hearing." Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985) (emphasis and citation omitted). If the claimant did not validly waive the right to be represented, "the ALJ is under a 'special duty' to develop a full and fair hearing by conscientiously probing into all relevant facts." Id. n.2 (citations omitted). "This duty requires, essentially, a record which shows that the claimant was not prejudiced by the lack of [representation]." Id. (quoting Smith, 677 F.2d at 829). In examining whether a claimant was prejudiced by the lack of representation, a reviewing court must ensure the ALJ "scrupulously and conscientiously probe[d] into, inquire[d] of, and explore[d] for all the relevant facts." Brown, 44 F.3d at 934-35 (quoting Smith, 677 F.2d at 829).

Conversely, if the claimant validly waived the right to be represented, the claimant must show "clear prejudice or unfairness" caused by the lack of representation to prove that he was denied a full and fair hearing.[8] Kelley, 761 F.2d at 1540 n.2 (quoting Clark v. Schweiker, 652 F.2d 399, 404 (5th Cir. 1981)). Of particular importance is "whether the record reveals evidentiary gaps which

---

[8]    The United States Court of Appeals for the Eleventh Circuit has stated the following regarding the two standards and their application:

> These two standards appear to differ only in degree. Both require that the ALJ fully develop the record. Both require a showing of prejudice to necessitate a remand to the [Commissioner] for reconsideration. The only discernable difference is that a more specific showing of prejudice is required if [a] claimant did not waive his [or her] right to [representation].

Kelley, 761 F.2d at 1540 n.2.

result in unfairness or 'clear prejudice.'" <u>Brown</u>, 44 F.3d at 935. Missing medical documentation or documentation of vocational services supporting a claim of disability can be prejudicial, especially when it relates to treatment occurring near or during the period in which the claimant is eligible for disability insurance benefits. <u>See</u> <u>id.</u>

## C.   Analysis

For ease of discussion, the validity of Plaintiff's waiver is initially addressed. Then, the undersigned determines whether Plaintiff was prejudiced by the lack of representation (i.e. whether the ALJ fulfilled her duty to develop a full and fair record in light of Plaintiff's <u>pro</u> <u>se</u> status).

### 1.   Validity of Plaintiff's Waiver

As noted, Plaintiff appeared at the hearing without counsel or a representative. The ALJ proceeded with the hearing without inquiring about Plaintiff's decision to appear <u>pro</u> <u>se</u> at the hearing. It was not until after the ALJ had finished questioning Plaintiff that Plaintiff herself brought up the issue of representation:

> [ALJ:] . . . And anything else?
>
> [Plaintiff:] That's it. Well, I also, I also have an attorney that I'm doing a lawsuit with, too. So --
>
> [ALJ:] Right?
>
> [Plaintiff:] -- I guess a lady, so I mean --

[ALJ:] Right, but you didn't bring him or her here --

[Plaintiff:] No, I didn't --

[ALJ:] as your representative?

[Plaintiff:] know I could, that's the thing.

[ALJ:] Right.

[Plaintiff:] So --

[ALJ:] Well, then you didn't talk to that person about it, either?

[Plaintiff:] No. Well, I, see, I didn't know. Two days ago, they called me and they said, oh, you got a hearing for your, for a security, for Social Security. I was like, oh. I was like, well, thanks for telling me. And I'm --

[ALJ:] Right, well, your mail was returned.

[Plaintiff:] But I'm here.

[ALJ:] We didn't have your address.

[Plaintiff:] Okay.

[ALJ:] There was a P.O. --

[Plaintiff:] Well, at least my phone number is the same, so --

[ALJ:] Right, right.

[Plaintiff:] I made sure I made it, one way or another.

ALJ: Well, I really appreciate that . . . . If your attorney for your other thing wants to contact us and participate, then by all means, tell him that he or she can.

[Plaintiff:] Okay.

Tr. at 44-45.

At some point on the date of the hearing, Plaintiff signed a form waiving her right to representation. <u>See</u> Tr. at 201 (waiver dated August 1, 2018). The waiver form advised Plaintiff of a number of rights, including her right to a representative and the right to postpone the hearing to obtain representation. <u>See</u> Tr. at 201. Plaintiff checked "Yes" in response to the following questions on the form:

> Do you understand your right to have a representative at this hearing?
>
> Do you understand the benefits of having a representative?
>
> Do you understand the cost of obtaining a representative?
>
> Do you understand the possibility of obtaining free representation?
>
> Do you want to proceed today without representation?

Tr. at 201. It is unclear whether the waiver was signed before or after the hearing.

Upon review, the undersigned finds that Plaintiff did not validly waive her right to representation. Even though Plaintiff was clearly unrepresented at the hearing, the ALJ failed to confirm that Plaintiff understood her right to be represented. The ALJ did not attempt to explore options with Plaintiff regarding representation, nor did she elicit any responses from Plaintiff indicating Plaintiff truly understood she had options other than self-

representation. As the Eleventh Circuit commented in <u>Brown</u>, "[n]othing in [Plaintiff's] testimony evinces an understanding that she had other options which were either explored or rejected." 44 F.3d at 935.

Indeed, particularly troublesome is Plaintiff's testimony that she did not know she had the right to a representative. <u>See</u> Tr. at 45. Many of the letters and notices the SSA mailed to Plaintiff were returned as undeliverable, including a February 22, 2018 letter that advised Plaintiff the Appeals Council had remanded the case to the ALJ and that enclosed a pamphlet regarding her right to representation. <u>See</u> Tr. at 161-71 (February 22, 2018 letter and enclosures); Tr. at 179-81 (duplicate of first page of February 22, 2018 letter); <u>see also</u> Tr. at 176-78, 299, 301, 302, 303, 304 (duplicates included) (other SSA correspondence returned as undeliverable). The administrative transcript does not show a return-to-sender notice with respect to the letter advising Plaintiff of the August 1, 2018 hearing and of her right to representation. <u>See</u> Tr. at 182-200 (letter dated June 12, 2018). Plaintiff, however, evidently did not receive it because she testified that she did not know about the hearing until two days before the date of the hearing when an SSA employee called her. <u>See</u> Tr. at 45.[9]

In light of the above circumstances, the undersigned is not convinced that

---

[9]     In any event, in <u>Brown</u>, a notice similar to the notice of hearing mailed here was found to be insufficient to ensure that the waiver was knowing and voluntary. 44 F.3d at 935 n.6.

Plaintiff knowingly and voluntarily waived her right to representation by merely signing the written waiver—whether or not it was signed before the hearing. To the extent the waiver was signed before the hearing, the ALJ made no determination at the hearing as to whether Plaintiff was capable of making an informed decision on the matter. Moreover, as Plaintiff observes, see Pl.'s Br. at 13, the SSA had previously accommodated Plaintiff's visual impairments by mailing her correspondence in "both a standard print and large print version," e.g., Tr. at 60, 65, 117. There is no indication that Plaintiff was provided with or signed a large print version of the waiver.

Accordingly, the undersigned finds that Plaintiff's waiver of her right to be represented was not made knowingly and voluntarily. The ALJ should have explored the options available to Plaintiff to ensure that Plaintiff was aware of these options and willing to forego them—especially given that the SSA had been having issues mailing correspondence to Plaintiff (issues of which the ALJ was well aware, see Tr. at 45).

### 2.  Prejudice to Plaintiff

Because Plaintiff's waiver was invalid, the ALJ's duty to ensure that Plaintiff received a full and fair hearing rose to a special one. See Kelley, 761 F.2d at 1540 n.2. The ALJ did not meet her special duty because she failed to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Brown, 44 F.3d at 934-35 (quoting Smith, 677 F.2d at 829). Even

if Plaintiff had validly waived her right to representation, Plaintiff suffered "clear prejudice or unfairness" by the lack of representation. <u>Kelley</u>, 761 F.2d at 1540 n.2.

Regardless of the standard applied, Plaintiff was prejudiced by the lack of representation. As explained below, the ALJ failed to develop a full and fair record because she failed to ascertain that the medical evidence was complete and failed to elicit relevant testimony from Plaintiff.

### a. *Medical Evidence*

In finding that Plaintiff was no longer disabled, the ALJ stated in the Decision that "[t]here is very limited medical evidence records since February 2016, the date of disability cessation, as [Plaintiff] has sought <u>minimal</u>, if any medical treatment for her severe impairment(s)." Tr. at 21. The ALJ found that the lack of medical evidence "suggests satisfactory management of [Plaintiff's] reported symptoms since disability cessation." Tr. at 21.

As acknowledged by the ALJ, the administrative transcript is severely lacking in medical documentation regarding Plaintiff's visual impairments. The latest treatment notes from an eye physician date back to 2007. <u>See</u> Tr. at 475-89 (treatment notes from 2002 to 2004);[10] Tr. at 343-45 (treatment notes from

---

[10]    The Court Transcript Index incorrectly indicates that the treatment notes from 2002 and 2003 are from 2012 and 2013.

2007). In addition, at the time of the Decision, Plaintiff had undergone three examinations of her eyes at the direction of the SSA: two in 2011 and one on January 26, 2016. <u>See</u> Tr. at 348-49 (April 20, 2011 visual evaluation report); Tr. at 350-56 (June 2, 2011 examination report);[11] Tr. at 495-98 (January 26, 2016 visual evaluation report).

The January 26, 2016 evaluation was conducted by an optometrist.[12] <u>See</u> Tr. at 495-96. The optometrist stated in the evaluation report that Plaintiff's best corrected visual acuity in her right eye ("OD" or "oculus dextrus") is 20/100. Tr. at 495. (Listing 2.02 requires that the "[r]emaining vision in the better eye after best correction [be] 20/200 or less." 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A1, § 2.02.).[13] It was noted that Plaintiff "[n]eeds evaluation and treatment as [Plaintiff] is going blind" and that the optometrist "[s]tressed [the] importance of treatment." Tr. at 496.

---

[11]    The 2011 evaluations were conducted before the original finding of disability was made on July 12, 2011. <u>See</u> Tr. at 18.

[12]    SSA records repeatedly indicate that Ernst Nicolitz, M.D. conducted the visual evaluation. <u>See, e.g.</u>, Tr. at 50, 87. Although the evaluation report was evidently sent from Dr. Nicolitz's office, <u>see</u> Tr. at 499, it does not appear that Dr. Nicolitz himself conducted the evaluation because the signature of the individual completing the evaluation report contains the suffix "O.D."

[13]    As noted above, at the time of the CPD, Plaintiff's impairments were found to have met Listing 2.02. <u>See</u> Tr. at 18.

The only medical records the ALJ requested after the hearing were neurology records from Euro Coast Neuro for treatment Plaintiff received after a motor vehicle accident in April 2018, about four months before the hearing. See Tr. at 509-44 (treatment records from Euro Coast Neuro); Tr. at 34, 44-45 (hearing). Although Plaintiff also referred to a "Doc Tony"[14] at the hearing and testified that, after the accident, she was admitted to the emergency room and then referred to Balance Therapy (apparently for physical therapy), see Tr. at 34-35, 42, it does not appear the ALJ made any effort to obtain records from these medical sources. Notably, Plaintiff testified she "go[es] to Balance Therapy every day, or three times a week now[.]" Tr. at 35.

The Euro Coast Neuro records proved largely irrelevant because the ALJ found that Plaintiff's motor vehicle accident "injuries occurred only several months ago and the medical assessments/diagnoses received from East Coast Neurology are well short of 12 months to be considered for disability purposes under the Regulations." Tr. at 21. Treatment records from "Doc Tony" or Balance Therapy may have provided more useful information about Plaintiff's visual limitations as Plaintiff appeared to indicate at the hearing that she had "asked them about a [S]eeing [E]ye [D]og . . . ." Tr. at 34-36; see also Tr. at 42-

---

[14]     "Doc Tony" is listed as the referring physician in the Euro Coast Neuro records. See, e.g., Tr. at 511. His relationship to Plaintiff is unclear, but it appears Plaintiff was seeing him for her motor vehicle accident injuries. See Tr. at 34-35, 42.

43. This is of particular importance because the ALJ relied on the fact that Plaintiff attended the hearing without the assistance of a Seeing Eye Dog. <u>See</u> Tr. at 33-34 (ALJ telling Plaintiff at the hearing, "And you walked in here on your own accord, with no assistance. So, I was kind of surprised by that" and "I recognize that it's hard for you to see, but like I said, I thought you'd come in with an animal or . . . a cane"); Tr. at 20-21 (Decision).

The prejudice caused by the scarcity of medical evidence is clear, especially given the ALJ's finding that the lack of such evidence suggested that Plaintiff was satisfactorily managing her symptoms. <u>See</u> Tr. at 21. Further compounding the matter is the fact that some of the correspondence returned to the SSA as undeliverable contained important information about the evidence that Plaintiff should have submitted. <u>See, e.g.</u>, Tr. at 176-77 (February 19, 2018 letter stating, "[I]f there is more evidence you want the [ALJ] to see, please submit it as soon as possible"). As explained below, the ALJ should have at least asked Plaintiff at the hearing about her treatment regimen to ascertain whether the administrative transcript should have been supplemented with additional medical evidence.

### b.   *Testimony*

In addition to the lack of medical documentation in the administrative transcript, the ALJ failed to elicit relevant testimony from Plaintiff. The hearing was quite brief, lasting only about fourteen minutes. <u>See</u> Tr. at 32

(indicating hearing began at 11:03 a.m.); Tr. at 46 (indicating hearing ended at 11:17 a.m.). The testimony elicited at the hearing was deficient in two respects.

First, the ALJ did not attempt to determine whether Plaintiff had undergone any treatment for her visual impairments since the CPD. It was inappropriate for the ALJ to rely on the apparent lack of treatment, see Tr. at 21, without first probing into what treatment Plaintiff had been receiving for her visual impairments.[15] Further, even if Plaintiff had received no treatment since the CPD, the ALJ was obligated to evaluate the reasons behind the lack of treatment, especially given that Plaintiff appeared to indicate at the hearing she was a Medicaid recipient. See Tr. at 36. This is so even in cases in which the claimant is represented. See Grier v. Colvin, 117 F. Supp. 3d 1335, 1345 (N.D. Ala. 2015) (recognizing that "an ALJ may not draw any negative inferences without first considering any reasonable explanations behind a claimant's lack of treatment"); Dawkins v. Bowen, 848 F.2d 1211, 1213-14 (11th Cir. 1988) (stating that when an ALJ's finding that a claimant is not disabled

---

[15]    Notably, the ALJ did not provide any support for her assertion that Plaintiff "has sought minimal, if any, medical treatment" for her visual impairments. Tr. at 21. Later in the Decision, the ALJ states that the January 2016 visual evaluation report indicates that Plaintiff "indicated no current provider or specialist for treatment of vision impairment," Tr. at 21, but the report does not appear to contain such information. See generally Tr. at 495-98, To the extent this could be inferred from the optometrist's note that Plaintiff needs treatment, Tr. at 496, the fact that Plaintiff did not have a provider at the time of the January 2016 evaluation does not necessarily mean that she had not received any treatment since the CPD in 2011.

is "inextricably tied to [a] finding of noncompliance," an ALJ must determine whether the claimant's "poverty excuses noncompliance").

Second, the testimony regarding the intensity, persistence, and limiting effects of Plaintiff's symptoms was minimal. The ALJ's questioning regarding Plaintiff's activities of daily living was limited to asking her whether she lived alone, "walk[ed] around," and worked. See Tr. at 34, 36. Plaintiff testified she used to work part-time as a custodian because she "love[s] to clean." Tr. at 36. Plaintiff testified very briefly about her visual limitations. She stated it is difficult for her to see whether someone is looking at her from across the room. See Tr. at 37. In response to that testimony, the ALJ asked, "But you have some pretty nice ink on your body. Can you see that?" Tr. at 37. Plaintiff, evidently confused because her testimony was that she could not see well at a distance, responded, "I mean. It's big." Tr. at 37. That was essentially the extent of the testimony regarding Plaintiff's symptoms.

The ALJ's failure to elicit important testimony regarding Plaintiff's treatment regimen and symptoms resulted in prejudice to Plaintiff.

## V. Conclusion

For the foregoing reasons, the Court finds that Plaintiff did not validly waive her right to representation and that the ALJ failed to develop a full and fair record in light of Plaintiff's pro se status. Accordingly, it is

**ORDERED:**

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

> (A)    Develop a full and fair record with respect to the medical evidence and Plaintiff's testimony;
>
> (B)    If appropriate, address the other issues raised by Plaintiff in this appeal; and
>
> (C)    Take such other action as may be necessary to resolve this matter properly.

2.    The Clerk is further directed to close the file.

3.    In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-ACC (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** in Jacksonville, Florida on March 8, 2021.

_____
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of Record